BEAUCHAMP<br>
*vs*<br>
HANDLEY *et al.*

---

## Beauchamp *vs* Handley *et al.*

ERROR TO THE NELSON CIRCUIT.

*Rescission of contracts. Executors. Parties. Substitution. Practice.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

CHANCERY.

Case 46.

December 18.

Facts of the case.

SOMETIME about the year 1789, James Handley bought from Charles Ewing, (by executory agreement in writing,) and settled upon a tract of land of 250 acres, included in a patent to John Ewing for 1000 acres, and to one half of which 1000 acres, the said Charles seems to have had an equitable right. Prior to the year 1814, the said James had recovered against the administrator of the said Charles, a judgment for $1000 in damages, for failing to convey to him the legal title, according to contract, and to enforce that judgment had instituted a suit in chancery for subjecting the equity of the heirs of said Charles. In this latter year, and during the pendency of the said suit in chancery, the said James transferred to Jereboam Beauchamp the benefit of the said judgment, in consideration whereof, Beauchamp covenanted to procure and convey to him the legal title to the said 250 acres, in a reasonable time. Some years afterwards, the suit in chancery being still undetermined, and the said James still residing on the said 250 acres, he devised his interest therein to his two sons, John and Alexander. After this, the executors of the said James (of whom the said Alexander was one,) sued Beauchamp for a breach of his covenant to convey the title, and recovered a judgment for $700, that being the amount which Beauchamp had received on the judgment against C. Ewing's administrator, and legal interest thereon.

C. Ewing's heirs having, through the instrumentality of C. A. Wickliffe, obtained a decree for a title from John Ewing's heirs, and James Handley's executors having also obtained a decree for a sale of the interest of the heirs of the said Charles, that interest was sold by a commissioner to Alexander Handley, a son of the executor, for $300.

The said Charles A. Wickliffe and Nathaniel Wickliffe, having also purchased the title of some of the heirs of John Ewing, made a contract with Alxander Handley, the executor, to procure for him a title to the 250 acres, in consideration of the judgment against Beauchamp and Nourse's sale bond for slaves bought under the decree. All this Beauchamp seems to have resisted, he having made a contract with one Frazer, as agent of John Ewing's heirs, for procuring the title to most of the said 1000 acres from said heirs.

To enjoin the collection, by Beauchamp, of the sum, made under the decree for selling the interest of C. Ewing's heirs in the 250 acres, Alexander Handley, the executor, filed a bill in chancery, and Beauchamp, in several answers, in the nature of cross bills, resisted the injunction, and making many other persons parties, prayed for all sorts of relief, to which, in any aspect of the facts, he could be entitled.

The Circuit Court having finally perpetuated the injunction and dismissed Beauchamp's cross bills, he now seeks a reversal of that decree.

A judgment at law, for a failure to convey land on a bond for a conveyance, is a virtual rescission of the contract to convey, and no conveyance can be decreed.

As a judgment for damages, for failing to fulfil his covenant with James Handley was rendered against Beauchamp, and seems still to remain in full force, and his contract with said Handley was thereby virtually rescinded, he cannot now, in this suit in chancery, avoid the effect of that legal rescission and assessment of damages, unless he had shown that he had procured a perfect title to the 250 acres, and had also, at the time of the trial of the action of covenant, a good equitable claim to exoneration which he was not bound to urge in the defence of that action. This not being shown in this case, Beauchamp seems to have no sufficient cause to complain of that judgment or of the decree enjoining him .from col-

lecting any more of the judgment in favor of Handley against Ewing's administrator, which had been transferred to him as the consideration of his covenant, for not fulfilling which, Handley's executors obtained the judgment against himself.

Nor has Beauchamp shown that he had performed any useful services or expended any money to the benefit of Handley's estate, in prosecuting the suit for subjecting the slaves and C. Ewing's interest in the land, to the satisfaction of the judgment against his administrator. And therefore, we cannot decide that the Circuit Judge erred in dismissing his cross bills as to the matter of compensation and reimbursement. And as he has neither shown that he had given, or is bound, or even is willing to give a sufficient consideration for his alleged executory purchase from Frazier, as the avowed agent of John Ewing's heirs, nor that Frazier was entitled to any decree against said heirs. Nor can he take advantage of any thing, (if even vulnerable or wrong,) in the alleged conduct of the Wickliffes; for, as he has failed to establish any equitable basis for any relief against the judgment against himself or for any decree in his favor, as to the amount of the judgment of Handley against Ewing's administrator, the contract between Handley's executors, C. Ewing's heirs and the Wickliffes, is a matter concerning which the parties thereto alone have a right to complain.

But, in one respect, it seems to this Court that the decree now sought to be reversed, should be deemed to be prejudicial to *Beauchamp*, and therefore, in our judgment, erroneous.

The devise of the 250 acres to John and Alexander Handley, by their father, James Handley, passed to those devisees whatever equitable right the testator was entitled to assert thereto, either as to the ultimate title or the equitable lien for the amount of the judgment against Ewing's administrators.

It appears, at least *prima facie*, as the record now stands, that John Handley sold his interest in the land to one Robinson, for a valuable consideration, and that Beauchamp made to Robinson a conveyance thereof with a covenant of general warranty, at the said John's in-

stance, and in consideration of his (Beauchamp's) contract with the testator, James Handley. It appears also, from the contract between the Wickliffes and Alexander Handley, Sr. and from other corroborating circumstances, that the sale of the title of C. Ewing's heirs to the 250 acres, to A. Handley, Jr. was made for the purpose of securing the land to Alexander Handley, Sr. under his father's contract with the said C. Ewing, and in lieu of the judgment against his administrator for damages for having failed to convey the legal title.

And it seems also, that at the time of that sale under the decree, C. Ewing's heirs held an available title to the said 250 acres of land, either legal or equitable, and which may thus pass to the use of Alexander Handley, Sr. or (which is virtually the same thing,) to his son, A. Handley, Jr. at his instance and in consequence of his own right thereto, acquired by his said contract.

An executor who is also co-devisee with another, of land held by title bond only, and recovering judgment on such bond, for failure to convey, holds the damages as trustee for his co-devisee, who is interested, to the extent which he was in the land.

Now, as a co-devisee and especially as an executor, Alexander Handley was under an equitable obligation and implied trust to John Handley, so far as he (Alexander,) had, as devisee and executor, any control over the contract between the testator and Beauchamp, and the judgment in the testator's favor, against C. Ewing's administrator.

If the title to the land could never be consummated, then John Handley had an equitable interest (both as a devisee of the land and as a distributee,) in Beauchamp's obligation as well as in the judgment against C. Ewing's administrator. And it does seem to us, therefore, that the title of C. Ewing's heirs, whether legal or equitable, being now established, and A. Handley, Sr. having secured that title by exercising his executorial control over Beauchamp's covenant, and the judgment against C. Ewing's administrator, he obtained the interest, thus secured, in trust for John Handley, to the extent of the said John's claim as a co-devisee of the land. Equity will not permit him thus to use his fiducial authority, and the choses in action of his testator for his own exclusive benefit and to the prejudice of his co-devisee, and implied *cestui que trust*, John Handley, or that either of the said John's vendee, Robinson, or guarrantor, Beauchamp.

As Handley, the executor, has obtained the title from Charles Ewing's heirs by surrendering the judgment against his administrator for his failure to convey the title to the testator, James Handley, the devisees of said James are entitled in equity to stand as they would have done had there never been any such judgment, and C. Ewing had conveyed the title to James Handley without any breach of his covenant.

If the allegations in Beauchamp's cross bill be true, as to the sale and conveyance to Robinson, he (Beauchamp,) was entitled to relief to the extent of John Handley's interest in the 250 acres; and a decree for a relinquishment of the title to him (for Robinson's use,) by A. Handley, Jr. or by the commissioner, if he had not conveyed to said Handley, should have been rendered on the general prayer to that effect in one of his cross bills.

But to render such a decree perfectly safe, or altogether proper, both Robinson and John Handley should be parties: because, as to them, not being parties, neither Beauchamp's allegations nor proofs would be conclusive.

As to this matter, therefore, the Circuit Court erred in decreeing an absolute dismission of Beauchamp's cross bills; the dismission should have been without prejudice, unless the Circuit Judge had seen fit to give time for bringing Robinson and John Handly before the Court as parties.

Wherefore, so much of the decree of the Court below as perpetuated the injunction against Beauchamp and dismissed his cross bills as to all matters, excepting John Handley's interest in the land, is approved and affirmed; but so much thereof as dismissed his cross bills as to John Handley's said interest, is reversed and the case remanded, with leave to Beauchamp to make Robinson and J. Handley parties, and for such further proceedings and final decree as shall be proper and consistent with the foregoing opinion.

*Owsley* for plaintiff: *C. A. Wickliffe and McHenry,* for defendant,

*Executor who is co-devisee with another, of land held by title bond, recov'ring a judgment against obligor for failing to convey, holds the judgment as trustee for his co-devisee.—If the land be afterwards acquired by executor, with the proceeds of the judgment, the co-devisee or his assignee will be entitled to the same interest with the executor as if the land had been conveyed before judgment.*

*It was error to dismiss the bill absolutely, without giving time to bring the proper parties before the Court.*